Filed 4/25/13  In re Breanna Y. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re BREANNA Y., a Person Coming Under the Juvenile Court Law. | B243900<br>(Los Angeles County<br>Super. Ct. No. CK91396) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUSTIN Y.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Veronica McBeth, Judge.  (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Melinda A. Green, Senior Associate County Counsel, for Plaintiff and Respondent.

Justin Y. (father) appeals from the juvenile court's orders finding jurisdiction over his daughter, Breanna Y., under Welfare and Institutions Code section 300, subdivision (b),[1] based on father's failure to protect Breanna from risks of harm associated with the known mental illness of the child's mother. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Department of Children and Family Services (DCFS) received a referral in mid-October 2011 alleging that then six-month-old Breanna was at substantial risk of abuse and neglect after her mother, Cameron F. (mother) was placed on an involuntary hold (§ 5150) after attempting suicide in front of father and Breanna. Mother (who is not a party to this appeal) was diagnosed with major depression and hospitalized for a week. A police report, dated October 11, 2011, indicates that mother had several cuts on one wrist, and admitted trying to kill herself by ingesting several pills and cutting her wrist with a piece of glass. The police interviewed father who told them mother was depressed about a custody dispute over Breanna's half-siblings.

During its investigation DCFS learned that Breanna's parents had a history of domestic violence, including one incident in which father was arrested. In December 2011, DCFS presented the parents a voluntary case plan to address issues related to their domestic violence problems and mother's mental health. At first, mother was irate and refused to sign the case plan, but did so on January 4, 2012 with father's encouragement.

Two days later, DCFS received a message from Breanna's maternal grandmother (grandmother) who was afraid mother was having a "mental health breakdown." Grandmother said Breanna's paternal grandfather (grandfather) had argued with mother the evening before when taking her to her psychiatrist's office, and mother left with father and Breanna. Father called grandmother later to say: he and mother had argued when they got home, the police were called and he had left Breanna with mother. At this point, because father left Breanna

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

with mother after the altercation, DCFS determined circumstances had become "exigen[t] and the child would need to be detained."

DCFS contacted father who said the parents had argued after mother threatened to leave him. During the argument, mother held Breanna in one arm, using her other shoulder to push father away. Mother had screamed and called father names. He had tried to calm her and convince her to put the baby down; she refused. Father barricaded himself in a bedroom and called grandfather, who advised him to take Breanna and leave. After several minutes, father heard mother leave. The police arrived soon thereafter. Father did not know mother had left Breanna alone on a bed before leaving. The baby woke up when the police began knocking. Father said he and mother had argued all weekend. He believed she was so argumentative because she stopped taking her medication. When asked why he had left Breanna with mother if he believed she was aggressive and wasn't taking her medication, father said he had tried to share that information with the police, but they had not listened. A police report, dated January 5, 2012, recounted a response to a family disturbance call at the parents' home. Father told the police he and mother had argued about her having an affair, and he locked himself in a bedroom to prevent the argument from escalating into domestic violence. Mother pounded repeatedly on the door, yelling for him to come out and was uncooperative with the police. The police ultimately asked father to leave. The baby stayed with mother.

Mother's psychiatrist told DCFS that mother had attended her appointments, but was not participating in her treatment and refused to complete assigned tasks. When grandfather brought mother to her most recent appointment, mother engaged in "extremely aggressive and argumentative," behavior she had not previously displayed. Grandfather told the psychiatrist mother had stopped taking her medication.

Mother denied having stopped taking her medication, and told DCFS father was always the aggressor when they fought. Father told DCFS that mother was argumentative and physically aggressive with him.

DCFS filed a section 300 petition on January 11, 2012, alleging that Breanna was at risk of harm due to the parents' domestic violence, mother's mental health issues, and father's

failure to protect Breanna. (§ 300, subds. (a), (b).) Breanna was detained from mother and father, each of whom received monitored visitation.

In connection with the subsequent jurisdiction/disposition report, mother told DCFS she had filed domestic violence charges against father in 2010, after he punched her in the lip and "busted her teeth and mouth." She was pregnant when this abuse occurred. Father was arrested, but mother declined to press charges. Father apologized and both parents agreed to attend joint counseling. Neither parent completed domestic violence counseling. A police report from October 21, 2010 stated that mother, then three months pregnant, said father punched her face with a closed fist. Mother's nose was swollen, her top and bottom lips were "busted," and she had sustained bruising on her chest, arm and knee after father shoved her to the floor the previous day. Mother declined an emergency protective order. Mother said she and father had another incident of domestic violence in January 2012 that involved pushing.

Father admitted engaging in domestic violence repeatedly during his relationship with mother. He hit her in the mouth, giving her a bloody lip. He said he and mother were "'pretty aggressive with one another,'" and it had "'gotten out of control.'" A relative of mother told DCFS that mother "'tends to be the aggressor'" in relationships. Grandmother said mother had "anger management issues" and a significant history of relationships involving domestic violence.

Mother told DCFS she was depressed in October 2011 over a custody battle with the father of Breanna's half-siblings, and that pressure caused her to suffer a breakdown. She "'couldn't take it anymore,'" took an herbal supplement and punched a mirror, cutting her wrist. In October, she was tested for Huntington's Disease (which is prevalent in her family), and began seeing a psychiatrist and taking Prozac. Father denied any awareness of mother's mental health issues before her suicide attempt, although he did say he had heard she had threatened to commit suicide in the past. He tried to prevent mother's suicide attempt, but she "ended up cutting herself and bleeding pretty bad." Father took mother to her therapist one time.

Grandmother said mother suffered from "'severe mental illness.'" She believed mother had always had mental health issues, and had become increasingly violent towards herself and others after having children.

At a February 22, 2012 hearing, DCFS was ordered to interview father and provide a supplemental report. DCFS was also given discretion to place Breanna with father if mother moved out of the home. At some point in spring 2012, the parents enrolled in couples counseling, and signed up for individual counseling, parenting and domestic violence programs.

In mid-March 2012, DCFS reported that mother was not receiving psychiatric care and had canceled all appointments with her psychiatrist. By May 24, 2012, mother had returned to her psychiatrist and was taking her medication. The parents were attending domestic violence and parenting programs, and had begun marriage counseling. Their couples counselor, unaware of the case history or mother's clinical diagnosis, wrote a letter stating the parents had a "very strong marriage."

The adjudication hearing transpired on July 5, 2012. Both parents pleaded no contest to count b-1, which alleged Breanna was at risk of harm because of domestic violence between the parents. Mother also pleaded no contest to count b-2, alleging that Breanna was at risk of harm due to mother's mental and emotional problems and that father failed to protect Breanna from mother's mental illness. Father argued that count b-2 should be dismissed. The juvenile court sustained the petition under section 300, subdivision (b) as to both counts.[2] Breanna was declared a dependent of the juvenile court, and ordered suitably placed with a relative. Father

---

[2] The sustained amended count b-2 read: "The [child's mother] has mental and emotional problems, including a diagnosis of Major Depression, which renders the mother incapable of providing regular care and supervision of the child. On 10/11/11, the mother was hospitalized for the evaluation and treatment of her psychiatric condition. The father . . . knew of the mother's mental and emotional problems and failed to protect the child. Such mental and emotional condition on the part of the mother endangers the child's physical health and safety, placing the child at risk of physical harm and damage."

was given monitored visitation, and ordered to participate in a domestic violence program and counseling. He appeals from one jurisdictional finding.

## DISCUSSION

Father's sole contention on appeal is that the juvenile court erred when it found Breanna was at risk because he was aware of mother's mental health and emotional problems, but failed to protect his child. DCFS asserts that father's appeal lacks merit because he has not identified any specific potential impact from the jurisdictional finding at issue, and his assertion that the finding might harm future dependency or family law proceedings is too speculative. DCFS also argues that, in the event we address the merits of father's assertion, substantial evidence supports the juvenile court's findings. DCFS's second assertion is well-taken.

1. *Father's jurisdictional challenge is not moot.*

DCFS maintains that we need not review father's argument that there is insufficient evidence to support the juvenile court's jurisdictional finding that Breanna was at risk because father was aware of but failed to protect the child from risks posed by mother's mental illness. The agency insists the issue is moot because father does not challenge the assertion of dependency court jurisdiction over Breanna as to him on the domestic violence count, and mother has not joined this appeal.

Further, DCFS argues that father's contention that he may suffer future harm is speculative and that, even if his evidentiary challenge is successful, it will not change Breanna's status as a dependent child. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494–1495 [concluding that jurisdictional findings must be predicated on current conditions, not potential future harm]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [appellate court may opt to affirm jurisdictional findings if substantial evidence supports any alleged statutory basis].) We recognize that we have the discretion to do so, but decline to refrain from addressing the merits of father's appeal.

An erroneous jurisdictional finding could potentially impact father's parental rights in this or future dependency proceedings. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.) Further, "refusal to address such

jurisdictional errors on appeal . . . has the undesirable result of insulating erroneous or arbitrary rulings from review." (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.) For these important reasons, although dependency jurisdiction over Breanna remains in place regardless of the merit of father's substantive assertions because the remaining findings based on the parents' domestic violence and mother's conduct are unchallenged, we review father's appeal on the merits.

2. *Substantial evidence supports the jurisdictional findings.*

""""When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citations.]"""" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.)

"'A jurisdictional finding under section 300, subdivision (b) requires: "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the child, or a "substantial risk" of such harm or illness.' [Citation.]" [Citations.]'" (*In re Precious D.*, *supra*, 189 Cal.App.4th at p. 1259.) DCFS bears the burden at the jurisdictional hearing to prove these elements by a preponderance of evidence. (§ 355, subd. (a).) "The appellant [bears] the burden to demonstrate there is [insufficient] evidence . . . to support the [juvenile court's] findings." (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 136.)

Father maintains there is insufficient evidence to support the juvenile court's jurisdictional finding on count b-2, that he "knew of mother's mental and emotional problems and failed to protect [Breanna]." We disagree.

Mother was placed on an involuntary hold for a week in October 2011 after admitting to the police she tried to kill herself by ingesting pills and cutting her wrists. Father understood at the time that mother was very depressed. While hospitalized, mother was diagnosed with major depression.

Several months later, both parents agreed to a plan proposed by DCFS to address mother's mental health problems and the parents' domestic violence issues. But mother's mental health worsened significantly shortly after that case plan was signed. Father and Breanna's grandparents all believed that mother had stopped taking her medication, and mother's family thought she was undergoing a "breakdown." Mother's psychiatrist said mother had been displaying uncharacteristically and "extremely aggressive and argumentative" behavior.

It was at this time, and after a weekend of arguments, that father and mother had a particularly ferocious dispute. During that argument, mother held Breanna in one arm, and pushed father with the other, refusing to put the baby down. The dispute became very heated and father barricaded himself away from the child and mother. While he was inside the barricaded room, mother continued yelling at father and pounding on the door. Eventually, she left the house, leaving the infant unattended on a bed while father remained in the barricaded room until the police arrived. Despite mother's extremely aggressive and volatile emotional state, and his fear that she was off her medication, father left Breanna in mother's care.

On these facts, we conclude that ample evidence supports the juvenile court's finding that father was aware of mother's emotional and mental health problems, and failed to protect Breanna by leaving her alone with mother, thereby placing the child at risk of harm.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:

ROTHSCHILD, Acting P. J.


CHANEY, J.

8